UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STACY ALAN SIBLEY

VERSUS

NANCY A. BERRYHILL,
COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION

CIVIL ACTION

NO. 18-874-EWD

(CONSENT)

## RULING AND ORDER

Stacy Alan Sibley ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") terminating his Disability Income Benefits ("DIB").[1] Plaintiff filed a memorandum in support of his appeal.[2] The Commissioner filed an opposition memorandum.[3] Based on the applicable standard of review under § 405(g) and the analysis which follows, the Court vacates[4] the Commissioner's August 28, 2017 decision and remands this matter to the Commissioner for further review consistent with this Ruling and Order.

### I. Procedural History

Plaintiff was initially found disabled on or about October 9, 1993.[5] The October 1993 initial determination, and the evidence related thereto, are not in the administrative record.

---

[1] R. Doc. 1, ¶ . References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)], p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."
[2] R. Doc. 29. Plaintiff was granted leave to file his supporting memorandum out-of-time based upon his showing of excusable neglect pursuant to Fed. R. Civ. P. 6(b)(1)(B). *See* R. Docs. 27-28.
[3] R. Doc. 33.
[4] On August 8, 2019, an Order of Reference was entered referring this matter to the undersigned to conduct "all further proceedings and the entry of judgment in accordance with 28 USC 636(c)…." (R. Doc. 26), based on the parties' consent. R. Doc. 18.
[5] AR pp. 89, 142.

### *July 2, 2014 - Hearing Officer's Decision*

On July 3, 2013, the Commissioner conducted a continuing disability review and determined that Plaintiff's disability had ceased, and his DIB therefore ceased.[6] On July 30, 2013, Plaintiff sought reconsideration of the cessation decision and a hearing was held before the Hearing Officer on June 27, 2014, which was attended by Plaintiff and his girlfriend.[7] On July 2, 2014, the Hearing Officer affirmed the cessation decision (the "Hearing Officer's Decision").[8] The Hearing Officer specifically determined that, based on Plaintiff's testimony and the psychological consultative examination ("CE") of Dr. James C. Smith,[9] Plaintiff's symptoms related to anxiety and mood disorder were "greatly lessened;" significant medical improvement had occurred; Plaintiff was no longer disabled due to limitations arising out of the foregoing conditions; and Plaintiff is capable of performing light work.[10]

### *July 7, 2015 – ALJ's First Decision*

On July 14, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to reconsider the Hearing Officer's Decision.[11] At the first hearing scheduled for January 15, 2015, Plaintiff appeared via telephone but requested additional time to obtain representation.[12]

---

[6] AR pp. 89 *and see* CDR Worksheets at AR pp. 352 and 401, *citing* Dr. James Smith's May 20, 2013 CE Report (April 29, 2013 evaluation date) at AR pp. 382-85 (Plaintiff had a normal affect and no signs of anxiety or depressed mood, was poorly motivated to take IQ test and scores were not valid, Plaintiff did not meet criteria for PTSD, and Plaintiff could maintain normal effort and pace over 40 hour workweek). *See also* Dr. Joseph Kahler's June 14, 2013 Psychiatric Review Technique ("PRT") at AR p. 387 ("Impairment(s) Not Severe," and listing Substance Addiction Disorders); AR p. 397 (no limitations in the paragraph B criteria, *i.e.,* the four areas of functional limitation); AR p. 399 (*citing* Dr. Smith's CE and finding that "significant work-related medical improvement appears to have occurred"); and Dr. Kahler's July 3, 2013 updated PRT at AR p. 404-16 (after receipt of records from Dr. Strobach, additionally finding Anxiety-Related Disorder, but with no limitations in the paragraph B criteria and no evidence to establish the paragraph C criteria.).
[7] AR pp. 121, 127-37 (Report of Disability Hearing).
[8] AR. pp. 90, 140, 145, 148.
[9] AR p. 140 *citing* Plaintiff's hearing testimony at AR pp. 131-32 and Dr. Smith's May 20, 2013 CE Report (April 29, 2013 evaluation date) at AR pp. 382-85.
[10] AR p. 146 *and see* AR p. 143 (increase in residual functional capacity since CPD, and medical improvement reflected on Plaintiff's ability to work); AR p. 144 (Plaintiff should be able to return to his past work); and AR p. 145 (Plaintiff was assessed a light RFC).
[11] AR p. 150.
[12] AR pp. 39-47.

The hearing was rescheduled to accommodate Plaintiff's request. At the second hearing on April 7, 2015, Plaintiff, representing himself, appeared and testified.[13] On July 7, 2015, the ALJ issued a Notice of Unfavorable Decision.[14] Thereafter, Plaintiff requested review by the Appeals Council.[15] On November 23, 2016, the Appeals Council vacated the ALJ's July 7, 2015 decision and remanded the case. The Appeals Council found that, while Plaintiff's disability was initially determined to have ended as of July 3, 2013, the ALJ failed to determine whether Plaintiff became disabled again from that date through the date of the ALJ's decision because of a worsening of any existing impairment or the onset of a new impairment, resolution of which issue was required pursuant to Social Security Ruling 13-3p.[16] On remand, the ALJ was instructed to make a determination on this issue.[17] The Appeals Council also instructed to the ALJ to "take any further action needed to complete the administrative record and issue a new decision."[18]

### *August 28, 2017 – ALJ's Current Decision*

On June 27, 2017, the ALJ held a third hearing, at which Plaintiff, represented by counsel, testified.[19] On August 28, 2017, the ALJ issued the operative decision in this matter. At Finding of Fact 16, the ALJ held that "[t]he claimant's disability ended on July 3, 2013, and the claimant has not become disabled again since that date due to any combination of impairments existing since July 3, 2013, and at least through the date of this decision," in conformance with the first of

---

[13] AR pp. 48-67.
[14] AR pp. 91-117.
[15] AR p. 193.
[16] AR pp. 118-19. *See* Soc. Sec. Ruling, SSR 13-3p; Appeal of an Initial Med. Disability Cessation Determination or Decision, SSR 13-3P (S.S.A. Feb. 21, 2013), which provides, in pertinent part, "Under *Difford*, [*Difford v. Secretary of Health & Human Services*, 910 F.2d 1316 (6th Cir. 1990)] as applied in AR 92-2(6), when we review a determination or decision that disability has medically ceased, the adjudicator must consider the individual's disability through the date of his or her determination or decision, rather than determining only whether the individual's disability had ceased at the time of the initial cessation determination. We are now revising our interpretation of section 223(f) of the Act to adopt the policy contained in *Difford* as as our nationwide policy."
[17] AR p. 119.
[18] AR p. 120.
[19] AR pp. 68-88.

the Appeals Council's remand directives.[20]  Plaintiff sought review of the ALJ's August 28, 2017 decision by the Appeals Council.[21]  On July 25, 2018, the Appeals Council denied Plaintiff's second request for a review.[22]

On September 28, 2018, Plaintiff filed his Complaint in this Court seeking review of the ALJ's decision.[23]  Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review, and the ALJ's August 28, 2017 decision is the Commissioner's final decision for purposes of judicial review.[24]

## II. Standard of Review

The Fifth Circuit has addressed the scope of this Court's review of the termination of benefits.[25] Even though the burden of proving disability is on the claimant, "once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged."[26] In other words, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the claimant's condition has improved.[27]  In addition, the Commissioner must weigh the facts which formed the basis for the prior

---

[20] AR p. 30, *citing* 20 C.F.R. 404.1594(f)(8), and *compare* to the ALJ's related Finding of Fact in the July 7, 2015 decision at AR p. 110.
[21] AR pp. 240-46.  Plaintiff's request for review was untimely; however, the Appeals Council found that Plaintiff provided a good grounds for his untimeliness.  *See* AR p. 244 and AR p. 1.
[22] AR pp. 1-5.
[23] R. Doc. 1.
[24] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").
[25] *Smith v. Commissioner of Social Security,* No. 16-212, 2017 WL 2292795, at *2 (N.D. Miss. May 24, 2017), *citing Taylor v. Heckler*, 742 F.2d 253, 256 (5th Cir. 1984) (*citing Buckley v. Heckler*, 739 F.2d 1047, 1048-49 (5th Cir. 1984)).
[26] *Smith,* 2017 WL 2292795, at *2, *citing Buckley*, 739 F.2d at 1048 (*quoting Rivas v. Weinberger*, 475 F.2d 255, 258 (5th Cir. 1973)).
[27] *Smith,* 2017 WL 2292795 at *2, *citing Taylor*, 742 F.2d at 255.

determination of disability with the Commissioner's new evidence and any additional evidence submitted by the claimant.[28] The ultimate burden of proof lies with the Secretary in termination proceedings.[29]

"Even though the Commissioner bears the burden of proof in cessation cases, the standard of review on appeal is the same as the standard in other Social Security disability cases."[30] Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[31] If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[32]

## III. The ALJ's Findings

The ALJ made the following relevant findings of fact and conclusions of law:

> 1. The most recent favorable medical decision finding claimant continued to be disabled is the determination dated July 6, 2001. This is known as the "comparison point decision" or CPD.[33]
>
> 2. At the time of the time [sic] of the July 2001 CPD, the claimant was determined to have no medical improvement since the initial determination; therefore, the record supports that the claimant had the same impairments and residual functional capacity at the July 2001 CPD, as he did in 1993. At the 1993 initial determination, the claimant had the following medically determinable impairments:

---

[28] *Id.*
[29] *Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir. 1991) ("The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings."); *Lackey v. Shalala,* 40 F.3d 384 (5th Cir. 1994) ("[T]he ultimate burden of proof lies with the Secretary in termination proceedings," *citing Griego* 940 F.2d at 943-44); and *Starr v. Shalala,* 18 F.3d 936 (5th Cir. 1994) (*same, citing id.*).
[30] *Flagg v. Berryhill*, No. 16-1687, 2017 WL 5483168, at *1 (D. Or. Nov. 13, 2017) *citing Bellamy v. Sec. Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985).
[31] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[32] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[33] AR p. 12.

anxiety-related disorder and affective disorder, with specific diagnoses including chronic post traumatic stress disorder, severe; and major depression, recurrent type. These impairments were found to result in a residual function capacity with marked limitations in ability to complete a normal workday and 40-hour workweek, and be aware of normal hazards and take appropriate precautions.[34]

\*\*\*

4. The medical evidence establishes that since July 3, 2013, the claimant has had the following medically determinable impairments: post post-traumatic stress disorder, depression, anxiety, degenerative disc disease of the lumbar spine and obesity. These are the claimant's current impairments.[35]

\*\*\*

6. Medical improvement occurred on July 3, 2013 (20 CFR 44.1594(b)(1)[36]

\*\*\*

7. Since July 3, 2013, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform a wide range of all exertional levels of work, but with the non-exertional mental ability to perform work of simple, routine nature, with only occasional public interaction.[37]

\*\*\*

16. The claimant's disability ended on July 3, 2013, and the claimant has not become disabled again since that date due to any combination of impairments existing since July 3, 2013, and at least through the date of the ALJ August 28, 2017 decision (20 CFR 404.1594(f)(8).[38]

## IV. Plaintiff's Allegations of Error

In support of his appeal, Plaintiff raises two assignments of error, which both arise out of Plaintiff's contention that the ALJ failed to consider a complete administrative record in making

---

[34] AR p.12 *citing* the Hearing Officer's Decision, AR p. 141.
[35] AR pp. 12-17.
[36] AR p. 17.
[37] AR p. 18.
[38] AR p. 30.

the determination of medical improvement, in contravention of the Appeals Council's November 23, 2016 remand order directing the ALJ to "take any further action needed to complete the administrative record."[39] In the first assignment of error, Plaintiff contends that the ALJ used the incorrect legal standard in finding that Plaintiff experienced medical improvement when she failed to follow the requirements of 20 C.F.R. § 416.994(b)(1).[40] Plaintiff's second assignment of error specifies that the ALJ's second and sixth Findings of Fact were legally incorrect and factually unsupported.[41] The crux of Plaintiff's argument is that:

> The Commissioner's decision should be reversed with an instruction to reinstate benefits because the ALJ did not have a complete record before her when she made her decision. The record was woefully incomplete because it did not include the most recent decision awarding Plaintiff Stacy Sibley benefits. Furthermore, the medical improvement, as it does not contain sufficient information as to his baseline condition.[42]

Therefore, the overall questions before the Court are whether the ALJ's decision that Plaintiff experienced medical improvement is supported by substantial evidence, and whether the ALJ applied the correct legal standard in reaching that decision.

---

[39] R. Doc. 29, pp. 2-3, *citing* AR p. 120.
[40] Although Plaintiff incorrectly cites 20 C.F.R. § 416.994(b)(1), that provision is nearly identical to the operative regulation at 20 C.F.R. § 404.1594(a), which provides: "(a) General. There is a statutory requirement that, if you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically. If you are entitled to disability benefits as a disabled worker or as a person disabled since childhood, or, for monthly benefits payable for months after December 1990, as a disabled widow, widower, or surviving divorced spouse, there are a number of factors we consider in deciding whether your disability continues. We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work. If your impairment(s) has not medically improved we must consider whether one or more of the exceptions to medical improvement applies. If medical improvement related to your ability to work has not occurred and no exception applies, your benefits will continue. Even where medical improvement related to your ability to work has occurred or an exception applies, in most cases (see paragraph (e) of this section for exceptions), we must also show that you are currently able to engage in substantial gainful activity before we can find that you are no longer disabled."
[41] R. Doc. 29, p. 3.
[42] R. Doc. 29, p. 1.

## V. The ALJ Committed Reversible Error

### A. The Status of the CPD is Unclear

A cessation of disability benefits requires a finding of medical improvement.[43] For purposes of determining whether medical improvement has occurred, the Commissioner must compare the current medical severity of the claimant's impairments to those that were present at the time of the most recent favorable medical decision that determined the claimant was disabled or continued to be disabled, *i.e.,* the comparison point decision ("CPD").[44] The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether the claimant was disabled or continued to be disabled, which became final.[45]

Neither the initial 1993 decision awarding DIB, nor the July 6, 2001 determination, which is the CPD, are in the administrative record.[46] The ALJ cites to the Hearing Officer's Decision as the only support for Finding of Fact 2.[47] According to the Hearing Officer's Decision, Plaintiff "was initially granted benefits on 10/09/93 due to the following: Anxiety Related Disorders; Affective Disorder (Mood). He was judged to be disabled due to marked limitations in the following: Ability to complete a normal workday and 40-hour workweek; Ability to be aware of normal hazards and take appropriate precautions."[48] According to the Hearing Officer's Decision,

---

[43] 20 C.F.R. § 404.1594(a).
[44] *Ball v. Berryhill,* No. 18-4750, 2019 WL 2079841, at *3 (E.D. La. Feb. 27, 2019), *report and recommendation adopted*, No. 18-4750, 2019 WL 2076328 (E.D. La. May 10, 2019), *citing* 20 C.F.R. § 416.994(b)(1)(vii).
[45] 20 C.F.R. § 404.1594(b)(7).
[46] There are references to the CPD in the Commissioner's May 21 2014 Summary of Evidence at AR p. 122, the Hearing Officer's Report of Disability Hearing at AR p. 127, the Hearing Officer's July 2, 2014 Decision at AR p. 142, and the operative decision of the Administrative Law Judge at AR pp. 12, 17-18. *See also* March 14, 2013 CDR Worksheets at AR pp. 352, 401, and 428. The CDR worksheets give the date of the CPD as July 9, 2001.
[47] *See* AR p. 12, *citing* the Hearing Officer's Decision, AR p. 141.
[48] *See* AR p. 141, Hearing Officer's July 2, 2014 Decision.

Plaintiff's disability was found to have continued due to "No Significant Medical Improvement" on review dated July 6, 2001.[49]

The ALJ did not expressly recognize that the CPD is not in the record despite its importance to the determination of medical improvement. However, it appears that the ALJ did not have the CPD because, while the ALJ references the CPD in her decision, there is no citation to the CPD itself as evidence supporting her findings. Instead, the ALJ relied upon the findings of the Hearing Officer in support of what is alleged to be contained in the CPD, and particularly, the finding of no significant medical improvement.[50]

### B. Findings of Fact 2 and 6 Are Not Supported by the Record

The ALJ's first conclusion in Finding of Fact 2—that Plaintiff had no significant medical improvement from the October 1993 initial determination to the July 2001 CPD—references solely to the Hearing Officer's July 2, 2014 Decision,[51] which in turn, merely recites that "the evidence in file at the time of the [CPD] 07/06/01 indicates that the claimant was found to have continuing disability due to No Significant Medical Improvement."[52] The only medical evidence in the administrative record contemporaneous to the CPD is the June 12, 2001 opinion of Plaintiff's psychiatrist Dr. Richard Strobach, which is also the only record referred to in the Hearing Officer's Decision and the Commissioner's CDR worksheets in reference to the Plaintiff's impairment at the time of the CPD, *i.e.*, "Severe PTSD."[53] Specifically, in his June 12, 2001 opinion, Dr.

---

[49] AR pp. 12, *citing* AR p. 141 *and see* AR p. 127.
[50] Other evidence in the record references the CPD. *See* the Hearing Officer's July 2, 2014 Decision, AR pp. 141-42, the SSA "Summary of Evidence" at AR p. 122, listing "CDR Continuance Dated 07/09/01," and CDR Worksheets at AR pp. 352, 401, and 428.
[51] *See* AR p. 12, *citing* "Exh. 6B/4," which is found at AR p. 141.
[52] As pointed out by Plaintiff, at one place in the Hearing Officer's Decision at AR p. 141, the Hearing Officer incorrectly states that Plaintiff was awarded benefits on "10/09/03," which appears to be a typographical error because elsewhere in the Hearing Officer's Decision the date benefits were awarded is listed as "10/09/93." The latter date appears to be the correct date based on the totality of the record and the representations of the parties. *See* AR pp. 142, R. Doc. 29, p. 2 and R. Doc. 33, p. 2.
[53] AR pp. 141, 352, 401, 428.

Strobach diagnosed Plaintiff with Chronic Post Traumatic Stress Disorder, Severe, not in remission, and Major Depression, Recurrent type, not in remission. Dr. Strobach did ***not*** diagnose Anxiety-Related Disorder or Affective Disorder (Mood), or specifically diagnose the marked limitations allegedly cited as a basis for the 1993 initial decision (ability to complete a normal workday and 40-hour workweek and ability to be aware of normal hazards and take appropriate precautions),[54] although Dr. Strobach found Plaintiff severely impaired with respect to his daily activities (based on a number of traits such as limited education, agitation, chronic pain, *etc*.), his ability to relate to others, and his ability to make vocational adjustments, among other findings.[55] Thus, it is unclear how, and upon what evidence, the finding of no significant medical improvement was reached. Relevant information as to the severity of Plaintiff's impairments at the time of the CPD is presumably in the CPD file, which is necessary for an evaluation of medical improvement.[56]

The ALJ's next conclusion at Finding of Fact 2 is that since the July 2001 CPD found no significant medical improvement, "the record supports that the claimant had the same impairments and residual functional capacity at the July 2001 CPD as he did in 1993." However, this finding cannot stand for the same reasons set forth above, *i.e.*, it is unclear how the finding of no significant medical improvement was reached because the July 2001 CPD and the 1993 initial determination, and underlying relevant medical evidence, including medical evidence supporting a diagnosis of Anxiety-Related Disorder, Affective Disorder, and a marked limitation in Plaintiff's ability to be

---

[54] AR 141.
[55] AR pp. 350-51. Dr. Strobach also diagnosed Pain Disorder Due to Underlying Medical Condition, Borderline Intellectual Functioning, Essential Hypertension, and GERD, and severe or moderately severe impairments in Plaintiff's ability to comprehend and follow instructions, ability to perform complex, varied, simple, and repetitive tasks, in Plaintiff's "constriction of interests," and with respect to Plaintiff's personal habits. *Id.*
[56] *See* 20 C.F.R. § 404.1594(b)(7), which provides that, for purposes of determining whether medical improvement has occurred, the Commissioner compares the current medical severity of the claimant's impairments which were present at the time of the CPD *to the medical severity of those impairments at the time the CPD was rendered.*

10

aware of normal hazards and take appropriate precautions *at the time of the CPD*, are not in the record.[57] Other than Dr. Strobach's June 12, 2001 opinion, which does not contain the same diagnoses and limitations as those purportedly underlying the initial determination, there are no other medical records, questionnaires, consultative examinations, *etc.*, that are contemporaneous to the CPD decision.

The ALJ's third conclusion at Finding of Fact 2, *i.e.*, "At the 1993 initial determination, the claimant had the following medically determinable impairments: anxiety-related disorder and affective disorder, with specific diagnoses including chronic post traumatic stress disorder, severe; and major depression, recurrent type"[58] is problematic for two reasons. First, it is not supported by independent evidence because the 1993 initial determination and underlying information are absent from the record. Second, it is unclear if it is accurate, because, as Plaintiff points out, it conflicts with the evidence on which the ALJ relies, *i.e.*, the Hearing Officer's Decision. The Hearing Officer's Decision quoted by the ALJ, which purports to quote the 1993 initial determination, states that the 1993 initial decision found disability due to "Anxiety Related Disorders; Affective Disorder (Mood). [Plaintiff] was judged to be disabled due to marked limitations in the following: Ability to complete a normal workday and 40-hour workweek; Ability to be aware of normal hazards and take appropriate precautions."[59] The Hearing Officer's

---

[57] Plaintiff incorrectly alleges that Dr. Strobach's June 2001 report and Dr. R. W. Culver's findings are the only medical records in the administrative record that pre-date July 2001. R. Doc. 29, p. 5. Plaintiff fails to note the presence of the December 18, 1996 opinion of Dr. Francisco Perez at AR pp. 457-66, which was rendered three years after the 1993 initial determination. It generally corresponds to Dr. Smith's 2013 report in that it found that Plaintiff magnified his symptoms and gave poor effort during testing. *Compare* AR pp. 457, 460 *with* AR pp. 382-85, Dr. Smith's May 20, 2013 CE Report (Plaintiff had a normal affect and no signs of anxiety or depressed mood, was poorly motivated to take IQ test/scores not valid, Plaintiff did not meet criteria for PTSD.). While Dr. Perez noted "some depression and anxiety," AR pp. 460-61, he did not diagnose Anxiety Disorder or Affective/Mood Disorder, and specifically ruled out chronic PTSD. AR pp. 461-62. Furthermore, the records attributed to Dr. R.W. Culver (apparently because of a cover letter from him dated 2003 at AR p. 467) actually appear to be the handwritten notes of Dr. Perez from 1996 and the results of diagnostic tests that Dr. Perez refers to in his December 1996 report. *See* AR pp. 469-79.
[58] AR p. 12.
[59] AR p. 12 referencing "6B/4," which is found at AR p. 141.

Decision does not list "chronic post traumatic stress disorder … and major depression" as impairments that initially led to a finding of disability in 1993.[60] Thus, the factual basis for the ALJ's addition of PTSD and depression diagnoses to the 1993 initial determination is not clear.

Considering these discrepancies and the absence of information in the record, it is unclear what the initial determination of disability was based upon and what the complete findings of the July 2001 CPD were with respect to the Commissioner's determination of "No Significant Medical Improvement." Notably, it is also unclear if the "evidence in file at the time of the [CPD]" referenced by the Hearing Officer[61] contained any other pertinent information other than Dr. Strobach's June 12, 2001 decision.

Regarding the ALJ's finding of medical improvement at Finding of Fact 6, Plaintiff argues that the ALJ could not make a determination of medical improvement without the CPD decision, and contends that "[i]t is obvious that the record is incomplete and that the file from the previous CPD is lost because there is no information in the record."[62] Plaintiff argues that 20 CFR § 416.994(b)(2)(iv)(E)[63] required the ALJ to make the determination of whether to reconstruct the CPD file and the ALJ erred in failing to do so. According to Plaintiff, because the ALJ failed to make the reconstruction determination and because relevant parts of the prior record were not reconstructed, a finding of medical improvement is precluded by operation of 20 CFR § 416.994(b)(2)(iv)(E) and *Hallaron v. Colvin*.[64]

The Commissioner argues that record references to Dr. Strobach's June 2001 report contemporaneous with record references to the CPD conclusively establish that Dr. Strobach's

---

[60] Dr. Strobach's June 12, 2001 opinion mentions these diagnoses. AR pp. 350-51.
[61] AR p. 141.
[62] R. Doc. 29, p. 8.
[63] Plaintiff cites 20 C.F.R. § 416.994(b)(2)(iv)(E), but the applicable (although substantively identical) provision is found at 20 C.F.R. § 404.1594(c)(3)(v) and is reproduced at fn 40.
[64] R. Doc. 29, p. 8, *citing Hallaron v. Colvin*, 578 F. App'x 350, 353 (5th Cir. 2014).

June 2001 report was the only record in the CPD file and Plaintiff has not demonstrated that the absence of additional evidence represents reversible error.[65] The Commissioner further argues that, while the absence of the CPD itself may constitute error, such error does not warrant remand because the ALJ could still render a finding of medical improvement by comparing the (only) evidence contemporaneous to the CPD in the administrative record, *i.e.*, the June 2001 Dr. Strobach report, with the 2013 findings of Dr. Smith.[66] As explained above, however, there is currently no substantial evidence supporting (1) the specific findings of the CPD; (2) Plaintiff's Anxiety-Related Disorder, Affective-Disorder (Mood), and Plaintiff's marked limitation in the ability to be aware of normal hazards and take normal precautions—all of which the ALJ imputed to Plaintiff as existing impairments at the time of the CPD;[67] and (3) the CPD's determination of no significant medical improvement of the foregoing conditions, all of which is relevant "prior [] medical evidence" for the current evaluation of medical improvement.[68] The ALJ erred in not obtaining and reviewing this information.

### C. The ALJ Did Not Follow the Proper Procedure if the CPD File Cannot Be Located

The ALJ does not specifically state that the CPD file could not be located; however, the lack of prior relevant medical evidence discussed above, in connection with the "absence" of the CPD in the record,[69] suggest that portions of the CPD file, including the CPD itself, are lost/cannot

---

[65] R. Doc. 33, p. 9, *citing* AR pp. 122, 352, 401, and 428.
[66] R. Doc. 33, pp. 8-9.
[67] AR p. 12.
[68] *See* 20 C.F.R. § 404.1594(b)(7) (For purposes of determining whether medical improvement has occurred, the Commissioner compares the current medical severity of the claimant's impairments which were present at the time of the CPD to the medical severity of that impairment(s) at the time the CPD was rendered.). *See also* 20 C.F.R. § 404.1594 (c)(1): "Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." Further, it is simply not clear that the only evidence in the CPD file and considered in the Hearing Officer's Decision adopted by the ALJ was Dr. Strobach's June 2001 report.
[69] *See* R. Doc. 33, pp. 8-9.

be located. Agency regulations mandate the procedure an ALJ must follow in the event a benefit recipient's CPD file cannot be located:

> If the prior file cannot be located, we will first determine whether [the recipient is] able to now engage in substantial gainful activity based on all [his or her] current impairments.... If [the recipient is] able to engage in substantial gainful activity,[70] **we will determine whether an attempt should be made to reconstruct those portions of the missing file that were relevant to our most recent favorable medical decision (e.g., work history, medical evidence from treating sources and the results of consultative examinations).** This determination will consider the potential availability of old records in light of their age, whether the source of the evidence is still in operation, and whether reconstruction efforts will yield a complete record of the basis for the most recent favorable medical decision. If relevant parts of the prior record are not reconstructed either because it is determined not to attempt reconstruction or because such efforts fail, medical improvement cannot be found. The documentation of [the recipient's] current impairments will provide a basis for any future reviews. If the missing file is later found, it may serve as a basis for reopening any decision under this section....[71]

Agency regulations *preclude* a finding of medical improvement when the CPD is not reconstructed either because it is determined that reconstruction will not be attempted or because such efforts fail.[72] In light of the foregoing regulation, and because the Commissioner bears the ultimate

---

[70] The ALJ made this determination, finding that Plaintiff could perform a significant number of jobs in the national economy. *See* AR pp. 29-30.

[71] 20 C.F.R. § 404.1594(c)(3)(v). Plaintiff cites 20 C.F.R. § 416.994(b)(2)(iv)(E), which is the analogous provision applicable to Title XVI claims.

[72] *Ball,* 2019 WL 2079841, at *4, *citing Hallaron*, 578 F. App'x at 353. The Commissioner argues that *Hallaron* is distinguishable because, in *Hallaron*, the ALJ explicitly recognized that the CPD file was lost and there was no information from the CPD file in the *Hallaron* record for the ALJ to consider, yet the ALJ proceeded to evaluate whether there was evidence of current disability without considering medical improvement from the time of the CPD, or whether to reconstruct the file. The Commissioner argues that *Hallaron* is distinguishable because the ALJ explicitly considered Dr. Strobach's June 2001 opinion in the record, compared to Dr. Smith's 2013 consultative report, and found medical improvement from the time of the operative CPD. R. Doc. 33, pp. 8-10. However, the fact that the record herein contains one CPD-contemporaneous document from Dr. Strobach is a factual distinction that is unavailing. As previously explained, Dr. Strobach's June 2001 opinion does not fully support the "No Significant Medical Improvement" finding. Further, *Halloran* specifically finds error with cessation of benefits without a finding of medical improvement which cannot occur when the file upon which the claimant's most recent favorable determination of benefits cannot be found and is not reconstructed. *Hallaron*, 578 F. App'x at 353 citing 20 C.F.R. § 416.994(b)(2)(iv)(E).

burden of proof in termination proceedings,[73] the ALJ committed error when she first failed to obtain and review the entire CPD file as directed by the Appeals Council's November 23, 2016 remand order, which directed the ALJ to "**take any further action needed to complete the administrative record**."[74] If the CPD could not be located, then the ALJ erred again when she failed to determine whether an attempt should have been made to reconstruct the entire file, including the CPD and all portions relevant thereto, pursuant to 20 C.F.R. § 404.1594(c)(3)(v).[75] Locating and/or reconstructing the CPD file could result in the discovery of evidence underlying the finding of "No Significant Medical Improvement" in the CPD, the Anxiety Disorder, Affective Disorder (Mood) diagnoses, and the RFC findings referenced by the Hearing Officer.[76] Based on

---

[73] *Griego,* 940 F.2d at 944 ("The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings."); *Lackey v. Shalala,* 40 F.3d 384 (5th Cir. 1994) ("[T]he ultimate burden of proof lies with the Secretary in termination proceedings," *citing Griego* at 943-44); *Starr v. Shalala,* 18 F.3d 936 (5th Cir. 1994) (*same, citing id.*). *See also Gilmore v. Berryhill,* No. 17-1026, 2018 WL 1175048, at *7 (E.D. La. Feb. 9, 2018), *report and recommendation adopted*, No. 17-1026, 2018 WL 1151546 (E.D. La. Mar. 5, 2018) ("Because the Secretary has found the claimant disabled, the claimant 'is entitled to a presumption of continuing disability.' *Gill v. Heckler*, 740 F.2d 396, 397 (5th Cir. 1984) ('The basis for [the] presumption [of continuing disability] is that a prior determination of disability is binding on all parties to the hearing and has a res judicata effect as to that record.'); see Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002) ('Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled.').")
[74] R. Doc. 29, pp. 2-3, *citing* AR p. 120.
[75] *See Ball*, 2019 WL 2079841, at *4: "Because the medical improvement determination requires an examination of the CPD, agency regulations provide the procedure an ALJ must follow in the event a benefit recipient's CPD file cannot be located…." Despite the foregoing holding, in *Ball*, the U.S. District Court for the Eastern District of Louisiana found that "the CPD itself is not required to be in the record for an ALJ to make a finding of medical improvement," and held that "the relevant portions of a missing CPD file – such as work history, medical evidence, and consultative examination results – must be reconstructed in order for medical improvement to be found." *Id*. at *7. Even if the CPD itself is not required to be in the record per *Ball*, the only contemporaneous information that is in the record is not enough to support the CPD-designated impairments, as explained above.
[76] *See, e.g., Granillo v. Colvin*, No. 14-04658, 2016 WL 4411811, at *6 (N.D. Cal. Aug. 19, 2016) (ordering remand due to the ALJ's failure to determine whether reconstruction should have been attempted despite the ALJ's recognition that "details of the prior [June 20, 2001] disability determination are not available in the record."). In *Fleming v. Sullivan*, 806 F. Supp. 13, 15 (E.D.N.Y. Aug. 24, 1992), the Appeals Council initially ordered remand to the ALJ for completion of the record, finding that a meaningful evaluation of the plaintiff's medical improvement was impossible without the Secretary's favorable determination and "most of the evidence" upon which it was based. (There were only two records contemporaneous to the CPD, and the decision indicates that only one of those pre-dated the CPD.) The ALJ again failed to complete the record but nonetheless found medical improvement occurred upon remand. The Appeals Council affirmed the second decision without mentioning that the prior record had still not been obtained. The district court granted summary judgment for the plaintiff, finding that another remand would be pointless in light of the Commissioner's failure to obtain the record as originally ordered. 806 F.Supp. at 16.

these errors, the ALJ used improper legal standards in making the finding of medical improvement.

"If the record before the agency does not support the agency action [or] if the agency has not considered all relevant factors, ... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[77] In the event an ALJ fails to follow the proper legal standard for the scenario of a missing CPD file, the Fifth Circuit had held that "remand to the Commissioner is appropriate."[78] Plaintiff's "entitlement to benefits depends on further factual development and the application of a standard that the Commissioner is best placed to apply."[79] On remand, the ALJ should obtain and review the entire CPD file for relevant evidence regarding Plaintiff's impairments at the time of the CPD. If the file is lost, then the ALJ must make the determination of whether an attempt should be made to reconstruct or locate the July 2001 CPD file, following the procedure set forth in 20 C.F.R. § 404.1594(c)(3)(v). "If the file can be reconstructed, the ALJ will be able to make the comparison the regulations mandate; if not, [Sibley's] benefits will be continued, and the new ALJ decision will serve as the comparison-point decision for future [continuing disability reviews]."[80]

## VI. Conclusion

By failing to obtain and/or reconstruct Plaintiff's July 2001 CPD file, the ALJ used improper legal standards in reaching her conclusion that Plaintiff experienced medical improvement, and the medical improvement decision is not supported by substantial evidence. Accordingly, the Court **VACATES** the Commissioner's August 28, 2017 decision and

---

[77] *Ball,* 2019 WL 2079841, at *7, *citing Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) *and citing I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").
[78] *Hallaron*, 578 F. App'x at 354.
[79] *Id.*
[80] *Ball,* 2019 WL 2079841, at *7, *citing Hallaron*, 578 F. App'x at 354.

16

**REMANDS** Plaintiff's case to the Commissioner to conduct further proceedings consistent with this Ruling and Order.

Signed in Baton Rouge, Louisiana, on March 31, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**